barr 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00631-CR







Craig Barr, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0951769, HONORABLE LARRY FULLER, JUDGE PRESIDING








 Craig Barr was convicted of aggravated sexual assault of a child and indecency with
a child by contact, Tex. Penal Code Ann. §§ 22.021, 21.11 (West 1994), and received sentences
of 55 years and 20 years. He challenges his conviction in four points of error, claiming that: (1)
the State's closing argument urged the jury to consider appellant's prior convictions and "bad
acts" as evidence of guilt; (2) the State's closing argument attacked defense counsel's efforts to
represent appellant and referred to matters not in evidence, rendering the argument as a whole
manifestly improper; (3) the State's cross-examination of appellant improperly concerned details
of appellant's probation and violation of its terms; and (4) the supplemental instruction to the jury
put before the jurors matters which improperly affected their deliberations. We will affirm the
trial court's judgment.



BACKGROUND


 The eight-year-old complainant lived with his mother, Sheryl Barr (1) and his younger
brother at the home of Bennie Barr, appellant's mother. Sheryl Barr's boyfriend, Ivory Carr, and
appellant were also among the twelve people living there. Sheryl Barr testified that in February
1995, complainant told her that appellant had had sex with him about ten times. She reported the
abuse to the Children's Advocacy Center, and a subsequent medical exam revealed evidence of
anal intercourse. Ms. Barr and her children moved into a different house about a week after the
complainant's disclosure.

 At trial, appellant testified to a past felony conviction, two misdemeanor theft
convictions, and recent convictions for organized criminal activity and theft for which he was on
probation. He denied perpetrating any sexual acts on the complainant, however. On cross-examination, he recounted participating in carjackings and robberies as part of his gang affiliation;
the defense raised no objection to this line of questioning. Appellant also admitted to watching
his brother beat Sheryl Barr while she was pregnant. He asserted that because he never helped
Sheryl, she was framing him for complainant's abuse and that it was really Ivory Carr who had
abused the complainant. 

 In the course of deliberations, the jury sent out three notes indicating difficulty
reaching a verdict. After eight and a half hours of deliberation and the third note, the judge gave
the jury a supplemental instruction; two hours and ten minutes later the jury convicted him of both
offenses for which he was tried. 



DISCUSSION


 Appellant's first two points of error concern the State's closing argument. He
asserts in his first point that the trial court erred in overruling his objection to the State's closing
argument because it urged the jury to consider appellant's prior convictions and "bad acts" as
evidence of guilt. There are four areas of proper jury argument: summary of the evidence,
reasonable deductions from the evidence, response to arguments of opposing counsel, and a plea
for law enforcement. Borjan v. State, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990). When
reviewing the propriety of a jury argument, an appellate court can find reversible error only if,
in light of the record as a whole, the argument is extreme or manifestly improper, it violates a
statute, or it injects new and harmful facts into the trial. Cannon v. State, 668 S.W.2d 401, 404
(Tex. Crim. App. 1984). 

 The State framed its closing argument in terms of credibility of the witnesses. The
prosecutor reminded the jury of appellant's past record and gang activity, suggesting that there
was some irony in appellant's honesty regarding his past stealing and carjacking and his lack of
honesty regarding this offense. Almost two pages of the statement of facts recite appellant's own
references to his gang activity, so the prosecutor's remarks may have been unnecessary to refresh
the jury's memory. The argument did not introduce any new facts and was not extreme in
challenging appellant's credibility. The argument was a permissible response to the defense
strategy: if I've been honest about my past misdeeds you should believe me when I say I didn't
commit this crime. When appellant finally objected on the ground that these arguments were an
improper invitation to the jury to consider other offenses in establishing guilt, the State
immediately made a remedial statement to the jury, "I don't want you to consider those [other
crimes]. But you can consider those for credibility of that man just like any other witness in this
case." 

 It is reversible error to argue to the jury that evidence of a prior conviction
admitted on the issue of a defendant's credibility is evidence of the defendant's guilt. Sanchez v.
State, 591 S.W.2d 500, 502 (Tex. Crim. App. 1980). In this case, however, the State used
evidence of appellant's prior convictions and "bad acts" to argue against his credibility. This use
of properly admitted evidence is appropriate. Ortega v. State, 651 S.W.2d 278, 282 (Tex.
App.--Fort Worth 1983, pet. ref'd); see Bush v. State, 642 S.W.2d 787, 789 (Tex. Crim. App.
1983). We therefore overrule appellant's first point of error. 

 In his second point of error appellant asserts that the State attacked defense
counsel's attempts to defend his client and referred to matters not in evidence. Specifically,
appellant complains of the State's comment that defense counsel had been "trashing" Sheryl Barr
and the State's claim that this was a "common defense tactic in these type of cases." Defense
counsel objected twice on the grounds that the State was attacking defense counsel and that what
is common in other jury trials was not part of the record here. The court overruled both
objections. On appeal, appellant argues that these comments rendered the argument improper and
that the trial court erred in overruling his objections.

 Appellant correctly observes that the State may not attack the lawful efforts of the
defense counsel to represent his client. The cases he cites to support his argument that the
prosecutor improperly attacked him are distinguishable from the case before us. In Cook v. State,
537 S.W.2d 258 (Tex. Crim. App. 1976), the State repeatedly challenged the defense's choice to
sever the trials of the two defendants, saying it was "trickery" and an effort to let each defendant
blame the other. Id. at 260. The trial court ordered the jury to disregard the comments but
denied defendant's motion for a mistrial. Id. at 260-61. The Court of Criminal Appeals reversed
on the ground that the prosecutor's version of the severance was wholly outside the record and
was clearly intended to inflame the jury. Id. at 261. Similarly, in Lopez v. State, 705 S.W.2d
296 (Tex. App.--San Antonio 1986, no pet.), the appellate court ruled that it was manifestly
improper for the State to argue to the jury that "the entire strategy of the defense counsel [had
been] to keep as much evidence from you as possible." Id. at 298. 

 In both Cook and Lopez, the improper arguments were directed at the actions of
defense counsel and injected prejudice into the proceedings. Cook, 537 S.W.2d at 261; Lopez,
705 S.W.2d at 298. In the case before us, however, appellant asserted that Sheryl Barr had
mental problems and that she was framing appellant because she did not want the real perpetrator,
Ivory Carr, to go to jail because he provided her financial support. In this context, the State was
asking the jury to recognize that it is not uncommon for a defendant to accuse someone else of the
offense in question. This does not rise to the level of impropriety seen in Cook or Lopez and there
was no error in overruling appellant's objection. Appellant's second point of error is overruled.

 In his third point of error, appellant contends that the trial court erred in overruling
his objections to the State's cross-examination concerning details of his probation and his violation
of its terms. Appellant objected twice during this line of questioning. After the first objection,
the witness did not answer and the State moved on to a different question. In such an instance
there is no error. King v. State, 631 S.W.2d 486, 492 n.15 (Tex. Crim. App.), cert. denied, 459
U.S. 928 (1982). Appellant's second objection, that "[a]ll this is irrelevant to the charge," came
after the State's question had already been answered. This was not a timely objection and did not
preserve error for review. Id.; Robinson v. State 728 S.W.2d 858, 860 (Tex. App.--Austin 1987,
no pet.). Accordingly, we overrule appellant's third point of error.

 Finally, appellant argues that the trial court erred in overruling appellant's objection
to the supplemental instruction to the jury because it put before the jurors matters which
improperly affected their deliberations. This instruction, known as an Allen charge, was given
to the jury to help resolve their difficulty in reaching a unanimous decision. The purpose of these
charges is to remind the jurors of their duty to deliberate with open minds and to decide the case
if they can conscientiously do so. Allen v. United States, 164 U.S. 492, 501 (1896); Duc Vu v.
State, 750 S.W.2d 8, 9 (Tex. App.--Texarkana 1988, pet. ref'd). The instruction is reversible
error if found to be harmfully coercive. Calicult v. State, 503 S.W.2d 574, 576 (Tex. Crim. App.
1974); Duc Vu, 750 S.W.2d at 9.

 In evaluating the coerciveness of an Allen charge, courts tend to approve charges
that include the cautionary instruction that each juror should adhere to his or her individual
convictions. Duc Vu, 750 S.W.2d at 9; Griffith v. State, 686 S.W.2d 331, 333 (Tex.
App.--Houston [1st Dist.] 1985, no pet.). The Allen charge given in this case was:



I have your note that you are deadlocked. In the interest of justice if you could end
this litigation by your verdict, you should do so. I don't mean that any individual
juror should yield his or her own conscience or positive conviction, but I do mean
that when you are in the jury room you should discuss this matter carefully, listen
to each other and try if you can to reach a conclusion on the question. It is your
duty as a juror to keep your mind open and free to every reasonable argument that
may be presented by your fellow jurors so that this jury may arrive at a verdict that
justly answers the consciences of the individuals making up this jury. You should
not have any pride of opinion and should avoid hastily forming or expressing an
opinion. At the same time you should not surrender any conscientious views found
on the evidence unless convinced of your error by your fellow jurors. You realize
that if you fail to reach a verdict, this case may have to be tried before another
jury, then all our time will have been wasted. And there is no reason to believe
that another jury would be any smarter than you. So accordingly, I ask that you
return to consider your deliberations.



This instruction, viewed as a whole, reminded the jurors of their duty to render a verdict but also
directed that they vote their consciences. 

 Appellant argues that the reference to time being wasted and to other juries not
being any more capable than this one put pressure on the jury to render a verdict. He cites two
cases which demonstrate unacceptable pressure exerted by a judge. In Womack v. State, 35
S.W.2d 723 (Tex. Crim. App. 1931), the judge asked the jury to identify the one hold-out for the
purpose of asking him if there was a possibility of his changing his vote. Id. at 724. When the
jurors did not respond, the judge directed the jury to return to the jury room and take an open
ballot to identify the hold-out. Id. Additionally, he told them that his goal was to prevent a
mistrial because it would cost the county money. Id. Within five minutes the jury had returned
with a unanimous verdict. Id. Similarly, in Golden v. State, 232 S.W. 813 (Tex. Crim. App.
1921), the judge reminded the deadlocked jury that it "is expensive to try these cases and the facts
being short and clear in this case, the court cannot see why you . . . cannot reach a verdict." Id.
at 814. He then asked the two jurors who were the minority vote if they would be able to agree
to a verdict; again, within five minutes of the judge's comments, the jury returned with a
unanimous verdict. Id. 

 The case before us is distinguishable from Womack and Golden; the judge did not
exert pressure on the individual jurors identified as hold-outs. The jury sent out three notes
indicating deadlock over the course of eight and a half hours of deliberations. After receiving the
Allen charge addressed to the jury as a whole, the jurors deliberated another two hours and ten
minutes before returning a unanimous verdict. There is nothing to indicate the individual jurors
felt pressured by the charge given; unlike the jury in Womack and Golden this jury did not rush
to reach a decision to please the judge minutes after receiving the charge. The object of the jury
system is to achieve unanimity by comparing views and arguing. Allen, 164 U.S. at 501. The
court's reminder that another jury would have to decide the case if this one did not was a
statement of fact which had no impermissible coercive effect. We find that the Allen charge given
was proper and overrule appellant's fourth point of error.



CONCLUSION


 We conclude that the trial court properly overruled appellant's objections to the
State's closing argument and its use of evidence regarding appellant's past convictions and bad
acts. We decline to review the State's cross-examination of appellant regarding the conditions of
his probation on the grounds that error was not properly preserved. And, finally, we conclude
that the Allen charge given to the jury was proper. For these reasons we affirm the trial court's
judgment.



 Bea Ann Smith, Justice

Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: May 1, 1996

Do Not Publish

1.   Sheryl Barr is the sister-in-law of appellant.


 the question. It is your
duty as a juror to keep your mind open and free to every reasonable argument that
may be presented by your fellow jurors so that this jury may arrive at a verdict that
justly answers the consciences of the individuals making up this jury. You should
not have any pride of opinion and should avoid hastily forming or expressing an
opinion. At the same time you should not surrender any conscientious views found
on the evidence unless convinced of your error by your fellow jurors. You realize
that if you fail to reach a verdict, this case may have to be tried before another
jury, then all our time will have been wasted. And there is no reason to believe
that another jury would be any smarter than you. So accordingly, I ask that you
return to consider your deliberations.



This instruction, viewed as a whole, reminded the jurors of their duty to render a verdict but also
directed that they vote their consciences. 

 Appellant argues that the reference to time being wasted and to other juries not
being any more capable than this one put pressure on the jury to render a verdict. He cites two
cases which demonstrate unacceptable pressure exerted by a judge. In Womack v. State, 35
S.W.2d 723 (Tex. Crim. App. 1931), the judge asked the jury to identify the one hold-out for the
purpose of asking him if there was a possibility of his changing his vote. Id. at 724. When the
jurors did not respond, the judge directed the jury to return to the jury room and take an open
ballot to identify the hold-out. Id.